UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**TASHAWN BERNARD**, a Minor, by his
Next Friend, **MICHAEL BERNARD and
LOVETTE MORGAN,**

               Plaintiffs,

v

**CITY OF LANSING, CHIEF ELLERY
SOSEBEE** (official capacity)**, OFFICER
DAMON PULVER** (individual and official
capacity)**, and OFFICER STACEY MEYERS**
(individual and official capacity),

               Defendant(s).

_____/

Case No:

Hon:

Mag:

Ayanna D. Neal (P64128)
GREWAL LAW PLLC
2290 Science Parkway
Okemos, MI 48864
(517) 393-3000
aneal@4grewal.com

_____/

## <u>COMPLAINT AND JURY DEMAND</u>

    **NOW COMES** Plaintiffs, Tashawn Bernard, a minor by his Next Friend, Michael Bernard

and Lovette Morgan, by and through their attorneys, GREWAL LAW PLLC, and for their Complaint

against City of Lansing, former Chief Ellery Sosebee (official capacity), Officer Damon Pulver

(individual and official capacity) and Officer Stacey Meyers (individual and official capacity)

states as follows:

## GENERAL ALLEGATIONS AND VENUE

1.  This is an action stating a federal course of action pursuant to 42 USC §§ 1983 and 1988 and the Fourth and Fourteenth Amendments to the United States Constitution.

2.  Jurisdiction is based on 28 USC § 1331 and § 1343(a)(1),(2),(3) and (4) and the aforementioned statutory and constitutional provisions, as this action seeks redress for the violation of Plaintiffs' constitutional and civil rights.

3.  Plaintiffs' claim for declaratory relief is authorized by 28 USC §§ 2201 and 2202, Federal Rule of Civil Procedure 57, and the general legal and equitable powers of this Court.

4.  Plaintiff further invokes the supplemental jurisdiction of this Court, pursuant to 28 USC § 1367(a) to hear and decide claims arising under state law that are so related to the claims within the original jurisdiction of this Court that they form part of the same case or controversy.

5.  Plaintiffs' claims are cognizable under the United States Constitution, 42 USC § 1983, and under Michigan law.

6.  Venue is proper in the United States District Court for the Western District of Michigan pursuant to 28 USC § 1391(b)(2), in that this is the judicial district in which the events giving rise to the claim occurred.

7.  The amount in controversy is within the jurisdiction of this Court as Plaintiffs' claimed damages are in excess of $75,000.00.

## PARTIES AND KEY INDIVIDUALS

8.  The paragraphs above are incorporated by reference as if fully stated herein.

9.    Tashawn Bernard an African American male, age fourteen (14) years old ("Tashawn"), at all times relevant herein was a 12-year-old and resident of the City of Lansing, Eaton County, Michigan.

10.    Michael Bernard and Lovette Morgan, parents of minor Tashawn and who together with Tashawn herein are referred to as "Plaintiffs", at all times relevant herein were residents of the City of Lansing, Eaton County, Michigan.

11.    Defendant City of Lansing ("Defendant Lansing" or "Lansing") is a municipal corporation and is a governmental body organized and existing under the constitution and laws of the State of Michigan, operating as the City of Lansing in the County of Ingham, State of Michigan, and conducts business within the territorial limits of the United States District Court of the Western District of Michigan.

12.    Lansing Police Department ("LPD") is Defendant Lansing's law enforcement body with a self-stated Values Statement that states:

> We, the members of the Lansing Police Department, are guided by the highest ethical standards.  We understand that as employees of a law enforcement agency, we have a special duty to our community and are held to a higher ethical standard than are the employees of many other organizations.  We provide the highest quality of personalized services to all who live, work, and visit in Lansing, Michigan.  We do this by empowering employees who build partnerships with the community to prevent and solve crime, lessen fear, and reduce neighborhood problems.  We believe in and respect the dignity of all people, and we respect individual and constitutional rights in fulfilling our mission

> Police personnel comprise a special class of public employee. Because we are conspicuous and visible representatives of government, our conduct is closely scrutinized.   When police behavior is found to be excessive, unwarranted, unjustified, or unlawful, this results in lost community support and respect – both necessary ingredients to the Department's capacity to perform.  Therefore, in addition to complying with the various procedure manual rules and procedures, our behavior will be guided by the following five LPD Core Values (1) Teamwork, (2) Excellence, (3) Courage, (4) Respect, (5) Character.[1]

---

[1]    https://www.lansingmi.gov/950/Policies-and-Procedures.

13.  Defendant Ellery Sosebee, former Chief of the LPD, was at all relevant times an agent and/or employee of Defendant Lansing and is sued in his official capacity.

14.  At all relevant times, the LPD operated under the direction of Defendant Sosebee, who was the chief law enforcement officer for the City of Lansing and the final policymaker of the LPD.

15.  The LPD is an entity created by and responsible to Defendant Lansing, and Defendant Sosebee exercised his authority on behalf of and for the benefit of the City of Lansing.

16.  Defendant Sosebee was responsible for the enforcement of all applicable laws and for the arrest of all persons who were alleged to have violated the law within the jurisdiction of the City of Lansing.

17.  Further, Defendant Sosebee was responsible for ensuring that LPD law enforcement officers enforce the law consistent with constitutional requirements.

18.  Defendant Damon Pulver, an officer for the LPD, was at all relevant times an agent and/or employee of Defendant Lansing and is sued individually and in his official capacity.

19.  Defendant Stacey Meyers, an officer for the LPD, was at all relevant times an agent and/or employee of Defendant Lansing and is sued individually and in her official capacity.

20.  Officer Austin Brown, an officer for the LPD, was at all relevant times an agent and/or employee of Defendant Lansing and responded to the scene.

21.  Officer Summer Haynes, an officer for the LPD, was at all relevant times an agent and/or employee of Defendant Lansing and responded to the scene.

22.  At all relevant times, Defendants were acting under color of law, under color of statutes, ordinances, regulations, policies, customs, and usages of the State of Michigan, Defendant Lansing and the LPD.

## FACTUAL ALLEGATIONS

23.  This is an action for damages and equitable and injunctive relief against Defendant City of Lansing, former Chief Ellery Sosebee, and Officers Pulver and Meyers individually, for violating Tashawn's constitutional rights and other rights accorded him by common and statutory law.

24.  On August 10, 2023, Tashawn was living in the City of Lansing, Eaton County, Michigan.

25.  On August 10, 2023, Tashawn was asked by his father, Michael Bernard, to take garbage from his Waverly Park Apartment home to the garbage dumpsters located behind the Waverly Park Apartments.

26.  On or around August 10, 2023, the LPD said that it was searching for a suspect involved in a car theft investigation in and around the Waverly Park Apartments, 4013 Harford Rd., Lansing, Eaton County, Michigan.

27.  As Tashawn was walking back to his apartment after depositing the garbage in the dumpster, Defendant Pulver commanded him to stop, turn around, and put his hands behind his back.

28.  Defendant Pulver spoke to Tashawn, but the Officer's body cam video released to Tashawn's family is missing vital minutes that would contain Defendant Pulver's confrontation and conversation with Tashawn.

29.  Defendant Pulver's gun was unholstered at the time he gave those commands to Tashawn.

30.  Defendant Pulver then put handcuffs on Tashawn's wrists, behind his back, and began walking Tashawn back to his police vehicle for questioning.

31.  At that time, Defendant Pulver stopped to answer questions asked of him from several eyewitnesses, including Mr. Bernard, who were asking why he had handcuffed Tashawn.

32.     Again, Defendant Pulver's body cam video released to Tashawn's parents does not contain the confrontation and conversation with the eyewitnesses.

33.     While Defendant Pulver was talking to the eyewitnesses, Defendant Meyers took Tashawn by the shoulder and walked him back to Defendant Pulver's vehicle where she put him in the backseat of the vehicle.

34.     During this time when he was taken by Defendant Meyers to be detained in the back of Defendant Pulver's vehicle, Tashawn was visibly upset and crying out, "What did I do?"[2]

35.     The sounds of Tashawn cries and words were obvious cries of a young child experiencing fear, panic, and distress.

36.     Tashawn did not respond to the LPD in the manner that an adult would respond to law enforcement but instead responded as a scared child would.

37.     Tashawn did not make any movements to signal that he was attempting to flee the police, attempting to evade the officers on the scene, or was an immediate threat to anyone.

38.     At the time Tashawn was handcuffed and led to the police vehicle, there were several police vehicles and officers present.

39.     Defendant Meyers spoke to Tashawn through the open door of the police vehicle and appeared to attempt to explain why Tashawn is handcuffed in the back of a police vehicle.

40.     Meyers told Tashawn that, "We have someone matching your description who stole a car. What's your first name? We're not going to hurt you. Our protocol is to put 'em in handcuffs…(inaudible)…because…(inaudible)…and we're trying to control them."[3]

41.     At all times while in the back of Officer Pulver's vehicle and while he is being interrogated by Officer Meyers, Tashawn was crying and afraid.

---

[2]     Officer Meyers Body Cam Video beginning at 1:20.
[3]     *Id.*, beginning at 1:45.

42.   At all times while in handcuffs and being interrogated, Tashawn answered Officer Meyer's questions.

43.   At some time while being detained in handcuffs in the back seat, Defendant Meyers asked Tashawn to stand up. Officer Summer Haynes then walked up to Defendant Pulver's vehicle to look at Tashawn and said, "No, that's not him."[4]

44.   Only after Officer Haynes identified that Tashawn was not the suspect of the stolen car ring did Defendant Meyers undo the handcuffs and release Tashawn to go back toward his father and apartment.

45.   Shortly thereafter, Defendant Pulver had a conversation with Officer Brown in Pulver's police vehicle about the incident.

   a.   Brown asked Pulver if they were looking for a black male with a white shirt.

   b.   Defendant Pulver responded, "White shirt, green shorts."

   c.   Officer Brown said, "That kid [referring to Tashawn] did not have a white shirt though."

   d.   Defendant Pulver responded, "That one we were talking to?  Green shorts though."

   e.   Officer Brown laughed.

   f.   Defendant Pulver said, "…was popping out of the woods.  Came out of the other side of dumpster.  Didn't see him."[5]

46.   It was determined that LPD was looking for a black adult male in a white t-shirt and lime green shorts.  Officer Haynes had seen the suspect prior to Defendant Pulver confronting Tashawn.

47.   Defendant Pulver knew that Tashawn did not match the description of the suspect the LPD was searching for related to the stolen cars when he put him in handcuffs and walked back

---

[4]   *Id.*, beginning at 2:30.
[5]   Defendant Pulver's Body Cam Video beginning at 3:00.

for interrogation.  Pulver's body cam video released did not contain the minutes when he confronted and questioned Tashawn and/or explained why he was being handcuffed.

48.    Tashawn was a 12-year-old child at the time of the incident.

49.    Tashawn was not wearing a white shirt at the time of the incident.

50.    Tashawn did not match the description of LPD's suspect.

51.    After the traumatic incident with the officers, Tashawn suffered extreme emotional and psychological distress diminishing his quality of life and his ability to cope both physically, emotionally and mentally. He was diagnosed with post-traumatic stress disorder, unspecified.

52.    Tashawn has increasing difficulty interacting with police authority figures and is frightened by them when they are in his vicinity.

53.    As a result of the incident, Tashawn has experienced panic/anxiety attacks, difficulty sleeping and required counseling to address residual symptoms from the trauma caused by Defendants.

54.    Defendant LPD has the ultimate responsibility and authority to investigate the violation of constitutional rights of any individual by its officers, and as a matter of acts, custom, policy and/or practice.

55.    Defendant LPD failed to adequately and properly investigate the incident involving Tashawn Bernard, including but not limited to failing to perform a thorough investigation into all the events relating to the handcuffing and detention of Tashawn and/or failing to thoroughly review and investigate all policies, practices, procedures and training materials related to the circumstances surrounding the incident involving Tashawn Bernard.

56.     Prior to the incident with Tashawn, Defendants Pulver and Meyers did not receive adequate training regarding community policing encounters with children.

57.     Tashawn Bernard's rights were violated because Defendant LPD, and Defendant Sosebee in his capacity as the former chief and final decision maker, tolerated, authorized and/or permitted customs, policies, practices and/or procedures of:

    a.     Improper and ineffective policing encounters with children, especially minority children/youth citizens;

    b.     Insufficient supervision of children/youth citizens;

    c.     Insufficient training regarding proper interaction and policing of children/youth citizens; and,

    d.     Unnecessary and unwarranted use of excessive force toward children/youth citizens.

58.     Defendant LPD's failure to adequately train and/or failure to follow proper policy, practice, or procedure significantly contributed to, and/or caused violations of Tashawn Bernard's constitutional rights, including, but not limited to, the following:

    a.     Failure to adequately train or failure to follow proper policy, practice, or procedure for using essential skills in identifying and responding to incidents involving a child/youth citizen;

    b.     Failure to adequately train or failure to follow proper policy, practice, or procedure for use of force toward children/youth citizens; and,

    c.     Otherwise failing to adequately train and/or failing to follow proper policy, practice, or procedure resulting in the violation of Tashawn Bernard's constitutional rights.

59.     Defendant LPD tolerated, authorized or permitted a custom, policy, practice or procedure of improper conduct and insufficient supervision, in that they trained their officers in a method that is designed or is known to cause harm, injury, and trauma to children/youth citizens.

60.   Defendant LPD tolerated, authorized or permitted a custom, policy, practice or procedure of improper conduct and insufficient supervision, in that they failed to adequately screen, counsel, or discipline such individuals as described above, with the result that said officers were allowed to violate the rights of children/youth citizens such as Tashawn Bernard.

61.   In LPD's Policy Department Manual effective date 6/2020, code 700.66 Youth Interaction and Arrest Policy, Patrol Car Confinement of Youth states:

> **PATROL CAR CONFINEMENT OF YOUTH**
>
> When safe, under the totality of the circumstances, present officers will consider a youth's age, whether known or objectively apparent to an officer, when determining whether to place a "youth" in the back of a patrol car as part of an investigation.  All placement of "youth" in a patrol car should be used only when no other reasonable alternatives exist within the scope of the incident or as necessary to conduct a courtesy transport of the "youth."

62.   Based on the actions of the LPD officers who interacted with Tashawn, the Patrol Car Confinement of Youth policy was not followed.

63.   Following the incident, LPD made a post on social media that provided a statement regarding the incident as well as the chief of police giving a statement to the media indicating:

   a.   "Community relations is a top priority for us as a department, from top-down."

   b.   "Our hope is we can put this unfortunate case of 'wrong place, wrong time' behind us and continue to represent the community that we serve."[6]

   c.   "As the Chief of Police, I want to apologize that this incident had such an effect on this young man and his family. I'm asking for the community to consider all the facts of the situation before making a judgment."

---

[6] See articles available at https://abcnews.go.com/US/12-year-speaks-gma-exclusive-interview-traumatic-wrongful/story?id=102250781, https://lawandcrime.com/crime/police-chief-mayor-apologize-after-mistakenly-detaining-12-year-old-black-boy-taking-out-trash/; https://www.nbcchicago.com/news/national-international/father-of-12-year-old-handcuffed-by-police-while-taking-trash-out-says-hell-never-accept-apology/3209111/

64.    Prior to the incident with Tashawn, Defendant LPD did not provide its employees with

adequate training regarding interaction with children/youth citizens.

65.    Prior to the incident with Tashawn, Defendant LPD's policy for its officers when

interacting with children/youth citizens was as follows:

> While youth are afforded the same constitutional protections as adults, the Lansing Police Department (LPD) acknowledges and recognizes the need for additional protective measures while encountering "youth." It is the policy of the LPD to take into consideration those unique characteristics and protections when dealing with "youth." **The detention and/or custodial arrest (handcuffing) of youth should be applied only when no other alternatives exist.**[7] (emphasis added).

66.    Prior to the incident with Tashawn, Defendant LPD's policy for its officers defines "youth"

as "an individual under the age of thirteen (13)."[8]

67.    Prior to the incident with Tashawn, Defendant LPD's policy for its officers regarding the

handcuffing of youth was as follows:

> **HANDCUFFING OF YOUTH**   When safe, considering the totality of the circumstances, officers will consider a youth's age, whether known or objectively apparent to a reasonable officer, when determining whether to  apply handcuffs or restraints or not. While there is no set age, the Supreme Court discussed, in *JDB v North Carolina*, that officers must understand the age of the "youth" and realize they are not an adult and that officers must realize a 7-year-old is not a 13-year-old and neither is an adult. The following are applicable to the handcuffing and restraint of youths:
>
> a. The handcuffing of youths under the age of thirteen (13) requires approval from LPD command unless (1) there are exceptional and exigent circumstances directly related to an officer's or youth's safety, (2) if there is a court order or (3) there are other circumstances  to be considered, based upon clearance of a supervisor.
>
> b. Handcuffs will only be used for as long as reasonably necessary for the protection of the officers, bystanders and the "youth." Officers will remove handcuffs as soon as reasonable to do so.

---

[7]    Lansing Police Policy; 700.66 – Youth Interaction and Arrest Policy -
https://content.civicplus.com/api/assets/a2d49569-f541-4215-b760-46ea86947beb?cache=1800; Effective Date 6.2020.
[8]    *Id.*

c. Officers will notify LPD command when a "youth" under 13 has been handcuffed. Notification will be documented in the accompanying report or CAD notes if there is an incident to be filed.

d. LPD command should be called to the scene when possible if it does not extend the duration of the stop beyond a reasonable length of time. If command is delayed the officer may release the "youth" and review the incident with the supervisor upon the supervisor's arrival at the scene.[9]

68. Tashawn was 12-years old when Defendant Pulver handcuffed him and Tashawn presented no exceptional or exigent circumstances at the time Defendant Pulver showed his weapon, handcuffed him, and Defendant Meyers detained him, while still handcuffed, in the back of Defendant Pulver's police vehicle.

69. Defendants' actions and inactions were in violation of their own policy and Tashawn's federal constitutional rights and other rights accorded him by common and statutory laws.

70. Defendants' actions and inactions were also in violation of Michigan common and/or statutory laws.

71. In whole or in part, as a result of some or all of the above actions and inactions of the Defendants, Tashawn Bernard's rights were infringed upon as a result of being handcuffed and detained by officers during the incident.

**COUNT I**
**42 USC § 1983 UNREASONABLE SEARCH AND SEIZURE**
**US CONSTITUTION AMENDMENT IV**
**<u>DEFENDANTS PULVER AND MEYERS</u>**

72. The paragraphs above are incorporated by reference as if fully stated herein.

73. The Fourth Amendment to the United States Constitution protects citizens from unreasonable searches and seizures by the government.

---

[9] *Id.*

74.    Accordingly, the Fourth Amendment prohibits police from subjecting citizens to arrest in the absence of probable cause or reasonable suspicion to believe the individual in question is engaged in wrongdoing.

75.    The City of Lansing, through the LPD, including Defendants Pulver and Meyers, had a policy, practice, pattern, or custom of seizing, detaining, and/or arresting African American children/youth citizens when there is no probable cause or reasonable suspicion to believe these children had committed a crime.

76.    In 2020, 83% of juveniles arrested in Lansing were Black. Black children make up about twenty-eight percent (28%) of Lansing's seventeen (17) and younger population. Black children are four and a half times as likely to be arrested in Lansing as White children. Although the percentage of Black children in the city of Lansing hasn't changed much, even with the amount of arrests of children down, the disparity between Black and White children arrested has grown.[10]

77.    Defendants, by seizing and detaining Tashawn in the absence of probable cause or reasonable suspicion that he had committed a crime, violated Tashawn's clearly established right to be free from unreasonable searches and seizures.

78.    As a direct and proximate result of Defendants' actions and/or inactions, Tashawn Bernard suffered mental anguish, anxiety, fright, shock, embarrassment, humiliation, mortification, psychological and emotional distress, post-traumatic stress disorder and physical pain and suffering.

---

[10]    Racial disparities in juvenile arrests increase in Lansing despite promises to address inequity. Lansing State Journal, Nov. 23, 2021 at https://www.lansingstatejournal.com/story/news/2021/11/24/racial-disparities-juvenile-arrests-increase-lansing-police/8656536002/.

## COUNT II
## 42 USC § 1983
## FALSE ARREST/FALSE IMPRISONMENT
## DEFENDANTS PULVER AND MEYERS

79.   The paragraphs above are incorporated by reference as if fully stated herein.

80.   Tashawn had a clearly established right under the Fourth and Fourteenth Amendments to the United States Constitution to be free from unreasonable seizures of his person.

81.   Tashawn was handcuffed and detained for no legitimate reason.

82.   Tashawn did not fit the description of the LPD suspect.

83.   Tashawn did not try to flee the presence of the LPD when they encountered him. Additionally, Tashawn's father, who identified himself as such, was standing on the sidewalk nearby the LPD officers and Tashawn could have been released to stand by or with his father while LPD officers investigated.

84.   Tashawn was not armed, believed to be armed, and did not pose any immediate threat or danger to anyone.

85.   Tashawn did not make any movements that caused a threat to any of the LPD officers on scene.

86.   Defendants Pulver and Meyers' unreasonable seizure of Tashawn included Defendants handcuffing Tashawn and wrongfully imprisoning him in a police car.

87.   Defendants Pulver and Meyers detained Tashawn without probable cause or reasonable suspicion that Tashawn was committing or had committed a crime.

88.   Defendants Pulver and Meyers' acts were objectively and subjectively unreasonable under the circumstances.

89.   Defendants Pulver and Meyers acted in a deliberate, grossly negligent, and/or reckless manner when they handcuffed and detained Tashawn.

90.   In subjecting Tashawn to seizure and detention, Defendants Pulver and Meyers deprived Tashawn of his constitutional and federal rights.

91.   Defendants Pulver and Meyers acted maliciously, with callous or reckless disregard, and deliberate indifference as to whether Tashawn's rights would be violated by their actions.

92.   As a direct and proximate result of Defendants' actions and/or inactions, Tashawn Bernard suffered mental anguish, anxiety, fright, shock, embarrassment, humiliation, mortification, psychological and emotional distress, and physical pain and suffering.


**COUNT III**
**42 USC § 1983 – EXCESSIVE FORCE**
**US CONSTITUTION AMENDMENT IV**
**DEFENDANTS PULVER AND MEYERS**

93.   The paragraphs above are incorporated by reference as if fully stated herein.

94.   The Fourth Amendment to the United States Constitution guarantees citizens to be free from unreasonable searches, seizures, and the use of excessive force.

95.   The aforementioned acts by Defendants Pulver and Meyers were committed under color of state law.

96.   As law enforcement officers acting under color of law, Defendants Pulver and Meyers were required to obey all laws of the United States of America.

97.   Based on the totality of the circumstances, Defendants Pulver and Meyers' actions as described above were objectively unreasonable.

98.   Defendant Pulver lacked any lawful basis to unholster his weapon scaring Tashawn.

99.   Defendant Pulver lacked any lawful basis to handcuff Tashawn.

100.  Defendant Meyers lacked any lawful basis to detain Tashawn in the back of Defendant Pulver's police vehicle.

101.   When Tashawn was handcuffed and detained in the back of Defendant Pulver's police vehicle, Defendants Pulver and Meyers had no information to support a reasonable suspicion that Tashawn was armed.

102.   Tashawn was not armed and posed no threat to Defendants Pulver and Meyers or any other officers on the scene.

103.   When Tashawn was handcuffed and detained in the back of Defendant Pulver's police vehicle, Defendants Pulver and Meyers had no information to support a reasonable suspicion that Tashawn was fleeing.

104.   Upon seeing LPD officers on the scene, Defendant Pulver's weapon unholstered, and being handcuffed hands behind his back, Tashawn reacted as a reasonable 12-year-old and began crying and asking, "What did I do?"

105.   No reasonable officer would have interpreted Tashawn's cries and screams as a reasonable basis to detain Tashawn or use force.

106.   Defendants Pulver and Meyers' actions of unholstering a weapon, handcuffing Tashawn and detaining him in the back of a police car constituted excessive force in violation of the Fourth Amendment.

107.   The acts committed by Defendants were callous and/or in reckless disregard and/or with deliberate indifference, and deprived Tashawn Bernard of the following clearly established and well-settled rights, privileges and immunities under the laws and Constitution of the United States:

    a.    Freedom from the use of excessive, unreasonable, and deadly force in violation of Tashawn Bernard's Fourth and Fourteenth Amendment rights;

    b.    Freedom from seeking and enjoying equal rights, privileges and immunities of citizens of the United States and the State of Michigan, including such rights as free speech, assembly, association and movement, and due process; and

   c.     Otherwise violating the rights of Tashawn Bernard.

108.   Defendants Pulver and Meyers subjected Tashawn to these deprivations of rights maliciously and/or by acting with callous and/or reckless disregard, and with deliberate indifference as to whether Tashawn's rights would be violated by their actions.

109.   Defendants Pulver and Meyers are not afforded the protection of qualified immunity as their actions with respect to excessive force violate clearly established laws that a reasonable officer should know.

110.   As a direct and proximate result of Defendants' actions, Tashawn Bernard was deprived of rights, privileges, and immunities under the Fourth and Fourteenth Amendments of the United States Constitution and the laws and Constitution of the State of Michigan.

111.   As a direct and proximate result of Defendants' actions and/or inactions, Tashawn Bernard suffered mental anguish, anxiety, fright, shock, embarrassment, humiliation, mortification, psychological and emotional distress, post-traumatic stress and physical pain and suffering.

**COUNT IV**
**42 USC § 1983 – MUNICIPAL LIABILTY**
**<u>DEFENDANT CITY OF LANSING</u>**

112.   The paragraphs above are incorporated by reference as if fully stated herein.

113.   Defendant Lansing has the ultimate responsibility and authority to train and supervise officers of the LPD in appropriate and reasonable:

   a.     Use of force toward children; and,

   b.     Measures to reduce the use of excessive force toward children.

114.   Defendant Lansing had a custom, pattern, practice and policy of failing to adequately train and supervise officers of the LPD in the proper use of force toward children, which led to a violation of Tashawn Bernard's rights which deprived him of his Constitutional rights

under the Fourth Amendment of the United States Constitution at all times material to this complaint.

115.    Defendant Lansing's failure to adequately train and supervise officers of the LPD regarding multiple and varied policies, practices, and procedures ultimately resulted in harm to Tashawn Bernard and includes, but is not limited to, the following:

    a.    Failure to adequately train and/or failure to follow proper policy, practice and/or procedure for using force toward children/youth citizens;

    b.    Failure to adequately train and/or failure to follow proper policy, practice and/or procedure with respect to engaging a child/youth citizen;

    c.    Failure to adequately train and/or failure to follow proper policy, practice and/or procedure for using essential skills in identifying child/youth citizen who is not a suspect on a particular call; and,

    d.    Otherwise failing to adequately train and/or failing to follow proper policy, practice and/or procedure resulting in the infringement of Tashawn Bernard's constitutional and federal rights.

116.    Defendant Lansing has the ultimate responsibility to establish, promulgate, and enact policy for the benefit of its child citizens.

117.    At the time of the incident that is the subject of this complaint, Defendant Lansing had a written policy regarding how its officers were to work with its child citizens and in the use of handcuffing its child citizens but the Defendants responsible for carrying out that policy failed when they seized and detained Tashawn Bernard.

118.    Defendant Lansing has the ultimate responsibility and authority to adequately train and ensure that its officers are properly carrying out any policies it has enacted.

119.    Defendant Lansing has the ultimate responsibility and authority to investigate citizen complaints that allege harm to a child citizen at the hands of its officers and as a matter of acts, custom, policy and practice, Defendants Lansing and Sosebee failed to adequately

and properly investigate complaints related to the incident involving Tashawn Bernard, including, but not limited to, failing to perform a thorough investigation into all of the events relating to the use of force, seizure, and unlawful detainment of Tashawn Bernard and failing to thoroughly review and investigate all policies, practices, procedures, and training materials related to the circumstances surrounding the incident involving Tashawn Bernard.

120.    By these actions and inaction, Defendant LPD, as a matter of acts, custom, policy and practice, deprived Tashawn Bernard of rights secured by the Fourth and Fourteenth Amendments to the United States Constitution in violation of 42 USC § 1983.

121.    As a direct and proximate result of Defendants' actions and/or inaction, Tashawn Bernard suffered mental anguish, anxiety, fright, shock, embarrassment, humiliation, mortification, psychological and emotional distress, post-traumatic stress and physical pain and suffering.

**COUNT V**
**42 USC § 1983 – FAILURE TO TRAIN AND SUPERVISE**
**DEFENDANTS LANSING AND SOSEBEE**

122.    The paragraphs above are incorporated by reference as if fully stated herein.

123.    Defendants Lansing and Sosebee had the ultimate responsibility and authority to train and supervise officers of the LPD in the appropriate use of force toward children/youth citizens, de-escalation techniques and methods for interactions with children/youth citizens, and as a matter of acts, custom, policy, and practice failed to do so with deliberate indifference.

124.    Defendants Lansing and Sosebee had a custom, practice, or policy and failed to adequately train and/or supervise officers of the LPD in the proper use of force toward children, and de-escalation techniques and methods for interactions with children, which led to a violation of Tashawn Bernard's rights and which deprived him of his Constitutional rights

under the Fourth Amendment of the United States Constitution at all times material to this complaint.

125.   Defendants Lansing and Sosebee implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of Defendants Pulver and Meyers by failing to adequately train and/or supervise officers of the LPD regarding proper policy, practice, and procedure resulting in the infringement of Tashawn Bernard's constitutional and federal rights, including, but not limited to, the following:

a.    Failure to adequately train and/or failure to follow proper policy, practice, and/or procedure for using force toward children/youth citizens;

b.    Failure to adequately train and/or failure to follow proper policy, practice, and/or procedure with respect to engaging a child/youth citizen;

c.    Failure to adequately train and/or failure to follow proper policy, practice, and/or procedure for using essential skills in identifying a child/youth citizen who is not a suspect on a particular call; and,

d.    Otherwise failing to adequately train and/or failure to follow proper policy, practice, and/or procedure resulting in the infringement of Tashawn Bernard's constitutional and federal rights.

126.   Defendants Lansing and Sosebee in their supervisory capacity, had the responsibility and authority to investigate the infringement of constitutional and federal rights of its youth citizens and as a matter of acts, custom, polity and/or practice, Defendants failed to adequately and properly investigate the incident involving Tashawn Bernard, including, but not limited to, failing to perform a thorough investigation into all of the events relating to the incident involving Tashawn Bernard and Defendants failed to thoroughly review and investigate all policies, practices, procedures and training materials related to the circumstances surrounding the injuries to Tashawn Bernard.

127.  By these actions and inactions, Defendants, as a matter of acts, custom, policy and practice, deprived Tashawn Bernard of rights secured by the Fourth and Fourteenth Amendments to the United States Constitution in violation of 42 USC § 1983.

128.  As a direct and proximate result of Defendants' actions and/or inaction, Tashawn Bernard suffered mental anguish, anxiety, fright, shock, embarrassment, humiliation, mortification, psychological and emotional distress, post-traumatic stress and physical pain and suffering.

**COUNT VI**
**42 USC § 1983 – SUBSTANTIVE DUE PROCESS**
**ALL DEFENDANTS**

129.  The paragraphs above are incorporated by reference as if fully stated herein.

130.  In practice, Defendant City of Lansing has used its officers to bully, harass, traumatize and deprive African American children and youth citizens of their civil liberties.

131.  Defendants' actions intentionally and willfully deprived Tashawn of his property and liberty interests without due process of law and without recourse for the arbitrary, abusive, and harassing conduct of Defendants.

132.  Defendants' actions proximately caused damage to Tashawn as previously and subsequently alleged.

133.  Defendants acted willfully, knowingly, and/or purposefully, and with deliberate indifference to deprive Tashawn of his constitutional rights.

134.  Due to the nature of Defendants' conduct, Tashawn is entitled to recover punitive damages against the individual Defendants.

135.  As a direct and proximate result of Defendants' actions, Tashawn was deprived of rights, privileges, and immunities under the Fourth and Fourteenth Amendments of the United States Constitution and the laws and Constitution of the State of Michigan.

136.    As a direct and proximate result of Defendants' actions and/or inaction, Tashawn Bernard

suffered mental anguish, anxiety, fright, shock, embarrassment, humiliation, mortification,

psychological and emotional distress, post-traumatic stress and physical pain and suffering.

## SUPPLEMENTAL STATE LAW CLAIMS

### COUNT VII
### MICHIGAN CONSTITUTION ARTICLE I § 11
### FALSE ARREST
### DEFENDANTS PULVER AND MEYERS

137.    The paragraphs above are incorporated by reference as if fully states herein.

138.    Tashawn had a clearly established right under the Michigan Constitution to be free from

unreasonable seizures of his person.

139.    Tashawn was detained for no legitimate reason.

140.    Defendants Pulver and Meyers seized and detained Tashawn without probable cause or a

reasonable suspicion that Tashawn was committing or had committed a crime.

141.    Defendants Pulver and Meyers' acts were objectively unreasonable.

142.    On August 10, 2023, Defendant Pulver and Meyers acted in a deliberate, grossly negligent,

and/or reckless manner when he unholstered his firearm at Tashawn (Defendant Pulver),

handcuffed Tashawn (Defendant Pulver), and seized and detained Tashawn (Defendants

Pulver and Meyers).

143.    Defendants Pulver and Meyers, in subjecting Tashawn to the unlawful seizure, deprived

Tashawn of his constitutional and federal rights maliciously, and acted with callous or

reckless disregard and deliberate indifference as to whether Tashawn's rights would be

violated by their actions.

144. As a direct and proximate result of Defendants' actions, Tashawn was deprived of rights, privileges, and immunities under the Fourth and Fourteenth Amendments of the United States Constitution and the laws and Constitution of the State of Michigan.

145. As a direct and proximate result of Defendants' actions and/or inaction, Tashawn Bernard suffered mental anguish, anxiety, fright, shock, embarrassment, humiliation, mortification, psychological and emotional distress, and physical pain and suffering.

**COUNT VIII**
**MICHIGAN CONSTITUTION ARTICLE I § 17**
**DUE PROCESS**
**ALL DEFENDANTS**

146. The paragraphs above are incorporated by reference as if fully stated herein.

147. In practice, Defendant City of Lansing used its officers to bully, harass, traumatize, and deprive African American youth citizens and youth citizens of their civil liberties.

148. Defendants' actions intentionally and willfully deprived Tashawn of his property and liberty interests without due process of law and without recourse for the arbitrary, abusive, and harassing conduct of Defendants.

149. Defendants acted willfully, knowingly and/or purposefully, and with deliberate indifference to deprive Tashawn of his constitutional rights.

150. Due to the nature of Defendants' conduct, Tashawn is entitled to recover punitive damages against the individual Defendants.

151. As a direct and proximate result of Defendants' actions, Tashawn was deprived of rights, privileges, and immunities under the Fourth and Fourteenth Amendments of the United States Constitution and the laws and Constitution of the State of Michigan.

152.  As a direct and proximate result of Defendants' actions and/or inaction, Tashawn Bernard suffered mental anguish, anxiety, fright, shock, embarrassment, humiliation, mortification, psychological and emotional distress, and physical pain and suffering.

**COUNT IX**
**GOVERNMENTAL LIABILITY - NEGLIGENCE**
**DEFENDANTS PULVER AND MEYERS**

153.  The paragraphs above are incorporated by reference as if fully stated herein.

154.  At all relevant times, Defendants Pulver and Meyers were acting in the course of their employment.

155.  Defendants Pulver and Meyers owed a general duty to use due care while interacting with Tashawn Bernard.

156.  Duties owed to Tashawn Bernard include, but are not limited to:

   a.  The duty to use verbal means such as advice, warning, or persuasion intended to de-escalate the situation before resorting to force;

   b.  The duty to refrain from using force where force was not necessary;

   c.  The duty to exhaust all reasonable alternatives before using force;

   d.  The duty to use only such force as was necessary and reasonable under the circumstances;

   e.  The duty to exercise restraint in difficult situations involving children/youth citizens and to analyze the situation and react in a professional manner;

   f.  The duty to use no force or the least restrictive amounts of force available as well as de-escalation techniques and methods toward children/youth citizens; and,

   g.  Other related duties to be identified.

157.  Defendants violated that duty in the following manners:

   a.  Handcuffing Tashawn Bernard though he did not fit the description of the suspect, was not armed, was not fleeing the scene, and was not otherwise resisting the officers in any manner;

b.    Unholstering firearms at Tashawn;

c.    Detaining Tashawn in a police vehicle;

d.    Questioning Tashawn outside the presence of his parents/guardians;

e.    Using force against Tashawn, a 12-year-old child;

f.    Failing to use skills to de-escalate the emotional trauma inflicted upon a youth citizen who is not a suspect; and,

g.    Otherwise failing to execute proper policies, practices and/or procedures that resulted in the infringement of Tashawn Bernard's constitutional, federal and state rights.

158.    Defendants Pulver and Meyers committed acts of gross negligence including, but not limited to, unholstering his firearm at Tashawn (Defendant Pulver), handcuffed Tashawn (Defendant Pulver), and seized and detained Tashawn (Defendants Pulver and Meyers).

159.    The aforementioned acts, carried out in the absence of probable cause or reasonable suspicion that a crime was being or had been committed, were so reckless as to demonstrate a substantial lack of concern whether an injury would result to Tashawn.

160.    Defendants breached the duties owed to Tashawn Bernard and were grossly negligent as that term is used and defined in MCL § 691.1407(2)(c)(the Governmental Tort Liability Act or "GTLA"), when they conducted themselves by actions and inaction described above, said acts and omissions having been committed with reckless and willful disregard for Tashawn's health, safety, Constitutional and/or statutory rights, and with a substantial lack of concern as to whether an injury would result.

161.    Defendants Pulver and Meyers are not afforded the protection of governmental immunity under MCL § 691.1407 et seq. as their actions and inactions as described in detail above constituted gross negligence under the GTLA.

162. Defendants are liable for the aforementioned injuries under MCL 691.1407(2) and Michigan law.

163. As a direct and proximate result of Defendants' actions and/or inaction, Tashawn Bernard suffered mental anguish, anxiety, fright, shock, embarrassment, humiliation, mortification, psychological and emotional distress, post-traumatic stress and physical pain and suffering.

**COUNT X**
**ASSAULT & BATTERY**
**<u>DEFENDANTS PULVER AND MEYERS</u>**

164. The paragraphs above are incorporated by reference as if fully stated herein.

165. Defendants Pulver and Meyers committed, or acted in concert to commit, acts that cause Tashawn Bernard to be apprehensive that Defendants would subject him to an imminent battery and intentional invasion of his rights to be free from offensive and harmful contact.

166. Said conduct by Defendants Pulver and Meyers demonstrated that the Defendants had a present ability to subject Tashawn to an immediate, intentional, offensive and harmful touching.  Tashawn Bernard did not consent to such conduct, which caused injury, damage, loss and/or harm.

167. Defendants Pulver and Meyers for the very purpose of causing harm, and/or in an extreme, outrageous and reckless manner physically engaged Tashawn in a manner that escalated physical interaction and use of handcuffs on Tashawn.

168. Use of handcuffs resulted in injury to Tashawn.

169. The acts described above constitute assault and battery, actionable under the laws of the State of Michigan.

170. Defendants committed, or acted in concert to commit, acts that resulted in harmful or offensive contact with the body of Tashawn Bernard.

171.    Tashawn Bernard did not consent to the contact that caused injury, damage, loss and/or harm.

172.    As a direct and proximate result of Defendants' actions and/or inaction, Tashawn Bernard suffered mental anguish, anxiety, fright, shock, embarrassment, humiliation, mortification, psychological and emotional distress, and physical pain and suffering.

## COUNT XI
## FALSE IMPRISONMENT
## DEFENDANTS PULVER AND MEYERS

173.    The paragraphs above are incorporated by reference as if fully stated herein.

174.    Defendant Pulver engaged in the unlawful restraint of Tashawn Bernard's liberty and freedom of movement by unholstering his weapon and handcuffing him.

175.    Defendant Meyers engaged in the unlawful restraint of Tashawn Bernard's liberty and freedom of movement by directing and walking with handcuffed Tashawn to Defendant Pulver's police vehicle and then placing him in the backseat of said vehicle.

176.    The aforementioned Defendants thereby engaged in these restraints with both express and implied physical force.

177.    As a direct and proximate result of Defendants' actions and/or inaction, Tashawn Bernard suffered mental anguish, anxiety, fright, shock, embarrassment, humiliation, mortification, psychological and emotional distress, post-traumatic stress and physical pain and suffering.

## DAMAGES AND RELIEF REQUESTED

178.    The paragraphs above are incorporated by reference as if fully stated herein.

179.    As a direct and proximate result of Defendants Lansing, Sosebee, Pulver and Meyers' actions and/or inaction stated above, Tashawn Bernard suffered serious mental anguish,

anxiety, emotional distress, a sense of outrage, loss of social pleasure, and enjoyment of life.

180.    The conduct, actions and/or inaction of Defendants as alleged in the above-stated counts and causes of action constitute violations of the common and/or statutory laws of the State of Michigan and the United States District Court has supplemental jurisdiction to hear and adjudicate said claims.

**WHEREFORE**, Plaintiffs respectfully request that this Court enter its Judgment against Defendants and in favor of Plaintiffs, in whatever amount is shown to be established by the proofs in this case, awarding Plaintiffs all economic damages, compensatory damages, non-economic damages, exemplary damages, punitive damages, attorney fees and costs, and pre- and post-judgment interest, as well as such other and further legal or equitable relief as this Court deems appropriate and available under the law.

Respectfully submitted,

**GREWAL LAW PLLC**

Dated: July 25, 2025            By:    *Ayanna D. Neal*
                                         Ayanna D. Neal (P64128)
                                         *Attorneys for Plaintiffs*
                                         2290 Science Parkway
                                         Okemos, MI 48864
                                         (517) 393-3000
                                         aneal@4grewal.com

**<u>JURY DEMAND</u>**

Plaintiffs Tashawn Bernard, a Minor by his Next Friend, Michael Bernard and Lovette Morgan, by and through their attorneys, GREWAL LAW PLLC, hereby demand a trial by jury on all claims set forth above.

Respectfully submitted,

**GREWAL LAW PLLC**

Dated: July 25, 2025    By:    *Ayanna D. Neal*
Ayanna D. Neal (P64128)
*Attorneys for Plaintiffs*
2290 Science Parkway
Okemos, MI 48864
(517) 393-3000
aneal@4grewal.com